IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                                                                   REPORT AND
                             Plaintiff,               RECOMMENDATION

     v.

                                                                   07-cr-144-bbc

DOLI SYARIEF PULUNGAN,

                             Defendant.
_____

REPORT

      The grand jury has charged defendant Doli Syarief Pulungan in a two count indictment with conspiring to violate the Arms Export Control Act (AECA), 22 U.S.C. § 2778, and with a related false statements charge under 18 U.S.C. § 1001. Now before the court for report and recommendation are Pulungan's motions to dismiss Count 1 (dkt. 28), to dismiss Count 2 (dkt. 29) and, if Count 1 is not dismissed, for a bill of particulars (dkt. 30).[1] The government opposes all three motions. For the reasons stated below, I am recommending that the court deny both motions to dismiss and deny the motion for a bill of particulars as presented but require additional disclosures from the government

I. Motion To Dismiss Count 1

      Pulungan seeks to dismiss Count 1 on the ground that the charging statutes are unconstitutionally vague as applied to him in this case. Pursuant to the AECA (in conjunction with 22 C.F.R. §127(a)(3)), it is unlawful to conspire to cause to be exported any designated

---

[1] I have the power under 28 U.S.C. § 636(b)(1)(A) to rule directly on the bill of particulars dispute, but I am including it in this report and recommendation because it relates to Pulungan's vagueness challenge to Count 1.

"defense article" without first obtaining the necessary license or written approval. The U.S. State Department's Directorate of Defense Trade Controls (DDTC) is authorized to promulgate the International Traffic in Arms Regulations (ITAR) that govern the export of "defense articles." ITAR contains the United States Munitions List at 22 C.F.R. § 121.1, which is supposed to designate by category what constitutes a "defense article." Pursuant to 22 U.S.C. § 2778(c) and 22 C.F.R. § 127.3(a), a person who willfully violates this statutory scheme commits a felony punishable by up to ten years in prison.

The grand jury charges in Count 1 that Pulungan conspired with other people surreptitiously to export to Indonesia 100 Leupold Mark 4 CQ/T Riflescopes. This was a reactive investigation, an overview of which is contained in the September 28, 2007 affidavit in support of the criminal complaint. *See* dkt. 1. The United States Munitions List, in Category I, paragraph (f) deems to be defense articles "riflescopes manufactured to military specifications."

Pulungan argues that this designation is not sufficiently definite to allow ordinary people to understand what conduct is prohibited and that it encourages arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357 (1983). Criminal laws must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

Pulungan argues that the term "manufactured to military specifications" in Section I(f) is unacceptably vague: it could apply only to scopes that are made for the military or "it could include scopes that are made for the general public but (by design or happenstance) meet the specifications of scopes that are made for the military." Brief in Support, dkt. 48, at 2. According to Pulungan, Leupold Mark 4 Close Quarter/Tactical Riflescopes are offered for public

sale on the Internet in at least two versions, "standard" and "certified," the latter meeting military and law enforcement requirements for waterproofing and other performance criteria. *Id.* at 3. Pulungan argues that it would be reasonable for an ordinary person to assume from this dichotomy that "standard" riflescopes were not manufactured to military specifications, and he proffers that nothing in the indictment or the government's pretrial disclosures suggests that he wanted to export certified riflescopes rather than standard ones. Further, Pulungan argues that the military specifications that make Leupold scopes a defense article are not readily available, thus preventing a person of ordinary intelligence from assuring that the scopes he intended to export were not on the United States Munitions List.

      The government responds in opposition to each of these points. *See* dkt. 51. Starting with Pulungan's last point, the government proffers that even if a hypothetical person of ordinary intelligence might have difficulty researching riflescope specifications and their status as defense articles– which is an easy hypothesis to accept here, see Section II, below–the government's proof establishes that Pulungan had actual knowledge that he could not export the Leupold scopes that he was attempting to purchase. Among other things, the government found in Pulungan's possession materials containing express warnings about and prohibitions against export of this particular riflescope. *Id.* at 3.[2] The government observes that this is a *scienter*

---

[2] Other facts contained in the criminal complaint affidavit tend to negate Pulungan's implication that this statutory scheme encourages arbitrary enforcement of the law, at least as applied to him in this prosecution. According to the government, Pulungan approached a Wisconsin arms dealer (who happened to have a day job as Chief of Police for Norwalk-Wilton Wisconsin), offered to buy the specified 100 scopes for $1000 each ($300 over list price), admitted he had no export license and asked the dealer for help getting them from the U.S. to Saudi Arabia, whence Pulungan could arrange shipment to Indonesia, thereby circumventing what Pulungan characterized as an export "embargo." The police chief promptly alerted the FBI. *See* dkt. 1.

crime in which it must prove that Pulungan acted willfully. Requiring proof of this level of *mens rea* minimizes the possibility that an innocent citizen might inadvertently violate the law. *See, e.g., United States v. Turcotte*, 405 F.3d 515, 531 (7th Cir. 2005)(in steroid analogue prosecution, the statute's "robust scienter requirement" doomed defendant's vagueness challenge). Thus, the government does not oppose Pulungan arguing to a jury that at the time of the events in question he believed that the "standard" scope was not a "defense article" and that this was the model he actually was trying to buy and export. But, argues the government, this does not make the statutory scheme vague as applied to him.

Finally, the government notes that although the Court of Appeals for the Seventh Circuit has not yet addressed the constitutionality of the AECA statutory scheme, all federal circuit courts faced with similar challenges have found it constitutional in the face of vagueness challenges. *See United States v. Sun*, 278 F.3d 302, 308-10 (4th Cir. 2002); *United States v. Lee*, 183 F.3d 1029, 1032-33 (9th Cir. 1999), *cert. denied*, 528 U.S. 990 (2000); *United States v. Gregg*, 829 F.2d 1430, 1437 (8th Cir. 1987), *cert. denied*, 486 U.S. 1022 (1988); *United States v. Swarovski*, 592 F.2d 131, 133 (2nd Cir. 1979)(addressing a predecessor statute's application to an aircraft gunsight camera).

The government is correct. The AECA is aimed at a relatively sophisticated group of businesspeople exporting arms and related goods, a group that the courts, in the opinions cited above, view as capable of protecting its own business interests. More importantly, the AECA criminalizes only willful conduct, and in this context willfulness means acting in contravention of a known legal duty. This is not a situation where a genuine misunderstanding or mistake can result in a criminal conviction. The government's factual proffer strongly suggests that Pulungan

4

was not some hapless entrepreneur accidently ensnared by an unreasonably vague definition of protected riflescopes (although he might qualify as bungling or inept).  In his two briefs for dismissal Pulungan hypothesizes a vagueness snare fashioned from the existence of "standard" versus "certified" Leupold scopes, but in light of the government's factual proffer, this is not sufficient to obtain pretrial dismissal of Count 1.  Whether the government can prove Pulungan's willful criminal conduct beyond a reasonable doubt will be decided at trial.  The facts already of record sufficiently establish that Pulungan sought to export riflescopes knowing that he was prohibited from doing so.  This is enough to defeat his vagueness challenge and I am recommending that the court deny the motion to dismiss Count 1.

II.  Motion for a Bill of Particulars

The only particular still in dispute is Pulungan's request for disclosure of the specifications to which the subject riflescopes were manufactured that make them defense articles on the Munitions List.  The government's initial response is that its expert will testify at trial that Leupold Mark 4 CQ/T Riflescopes are on the Munitions List.  Pulungan rejoins with an obvious observation: the list itself does not specify any brand or model of riflescope, nor does it list the specifications that would make the scopes defense articles; so what relevant testimony could this ostensible expert possibly provide?  Pulungan wants a breakout of the implied syllogism: a riflescope that possesses characteristics *x, y* and *z* is deemed to be manufactured to military specifications; a Leupold Mark 4 CQ/T Riflescope possesses characteristics *x, y* and *z*; therefore, a Leupold Mark 4 CQ/T Riflescope is manufactured to military specifications.  What, asks Pulungan, are *x, y* and *z*?  *See* Brief in Support, dkt. 50.

5

The government responds that it doesn't work this way. There is no *x, y* or *z* factor that lands a riflescope on the Munitions List in Category I(f). The only logical way to interpret the government's response is that there is *another* list, prepared by the DDTC, which determines whether any particular item is a defense article included on the Munitions List as part of ITAR. *See* Brief in Opposition, dkt. 53, at 1-2. The government continues:

> If an item is designated as a "defense article" on the United States Munitions List, a person or governmental entity seeking to export that item from the United States must receive a license or other approval to do so from the Directorate of Defense Trade Controls.

*Id.* at 2.

The government notes that Count 1 specifically alleges that

> the Leupold Mark 4 CQ/T Riflescope was defined by the ITAR as a "defense article" covered by Category I(f) on the United States Munitions List.

*See* Indictment, dkt. 8, Count 1 at ¶ 1(d).

If I am interpreting Count 1's passive-voice declaration and the government's explanation correctly, then some person or committee within the DDTC has declared that the Leupold Mark 4 CQ/T Riflescope is a "defense article" because it fits within Category I(f) of the Munitions list. But this doesn't answer Pulungan's actual complaint: how did it get there? Where, precisely, might a potential exporter actually *find* this ITAR designation of the Leupold Mark 4 CQ/T Riflescope? What is the foundational basis for the testimony of the government's trial witness from the DDTC? Does the DDTC have some other *real* list by make and model? Is there a memo specific to the Leupold scope's I(f) designation? If so, where is it and why hasn't it been provided to Pulungan as pretrial discovery?

6

As Pulungan's reply makes clear, *see* dkt. 54, this is not an attempt by Pulungan to challenge whether the underlying designation was proper; rather, it is an attempt to discern whether the designation ever actually was made. The facts underlying the designation are relevant *at least* to issues of notice, knowledge and intent therefore Pulungan is entitled to them.[3] Even so, because these are not the particulars that Pulungan requested in his motion (because he was operating under a more logical, but apparently incorrect assumption about how an item gets added to the Munitions List), the government does not need to provide this information in the form of a bill. However, the government promptly must explain in detail who designated the Leupold Mark 4 CQ/T Riflescope a "defense article," how they did it (the procedural mechanisms) and why they did it (the actual and specific reasons for the designation).

III. Motion To Dismiss Count 2

Pulungan has moved to dismiss the §1001 false statement charge against him on the ground that his allegedly false statements to the FBI about his international travel were, as a matter of law, not material. *See* Brief in Support, dkt. 49, at 1. While investigating this case, FBI agents interviewed Pulungan and inspected his passport, which showed travel only to the United States from Indonesia. The agents explicitly asked Pulungan several times if

---

[3] Depending on what Pulungan learns, I surmise that he might launch an attack on the purported designation, although probably not on the basis predicted by the government. Rather, as suggested in his Reply, Pulungan may argue that the Leupold Mark 4 CQ/T Riflescope really isn't on the Munitions List at all. This, however, is a dispute for another day.

he had ever visited any other countries and he consistently responded that he had not. Agents subsequently located an expired passport for Pulungan that reflected travel to Pakistan, Holland, Italy, Germany, Denmark and Poland, along with apparently unused visas for China, the United Kingdom and the Republic of Korea. Pulungan contends that any misstatement he might have made, *arguendo*, cannot be a crime because his travels were irrelevant to the FBI's AECA investigation.

The government responds that materiality is a question for the jury, not the court. *See United States v. Beaver*, 515 F.3d 730, 740 (7th Cir. 2008). The government does not attempt to defend its view that Pulungan's statements are material, preferring to put this matter to trial. This is the government's prerogative and the court gains nothing by offering an advisory opinion on materiality. It is a jury issue that is not subject to pretrial dismissal by the court. I am recommending that the court deny this motion.

## RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b0(1)(B) and for the reasons stated above, I recommend that this court:

    (1) Deny Pulungan's Motion To Dismiss Count 1;

    (2) Deny Pulungan's Motion To Dismiss Count 2;

    (3) Deny Pulungan's Motion for a Bill of Particulars; and

(4) Order the government forthwith to disclose the details of the Directorate of Defense Trade Controls' decision to designate the Leupold Mark 4 CQ/T Riflescope as a defense article.

Entered this 23rd day of April, 2008.

> BY THE COURT:
>
> /s/
>
> STEPHEN L. CROCKER
> Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin 53701

Chambers of
STEPHEN L. CROCKER
U.S. Magistrate Judge

Telephone
(608) 264-5153

April 23, 2008

Meredith Duchemin
Assistant United States Attorney
660 West Washington Avenue
Madison, WI 53703

T. Christopher Kelly
Kelly & Habermehl, S.C.
145 West Wilson Street
Madison, WI 53703

      Re:   United States v. Pulungan
              Case No. 07-cr-144-bbc

Dear Counsel:

      The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

      The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

      In accordance with the provisions set forth in the newly-updated memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before April 28, 2008, by filing a memorandum with the court with a copy to opposing counsel.

      If no memorandum is received by April 28, 2008, the court will proceed to consider the magistrate judge's Report and Recommendation.

      Sincerely,

      /s/

                                              Connie A. Korth
                                          Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation. Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections. An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection. Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions of the report and recommendation to which a party objects. The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection. The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions. The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.** *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).